UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RIDWAN ADEPOJU | No. 21 CR 630<br><br>Judge Matthew F. Kennelly |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The UNITED STATES OF AMERICA, through ANDREW S. BOUTROS, United States Attorney for the Northern District of Illinois, submits this sentencing memorandum in advance of the sentencing of defendant Ridwan Adepoju, and asks the Court to sentence defendant to a guideline sentence.

**I. BACKGROUND**

    **a. Offense Conduct**

Between in or around February 2017 and April 2019, defendant and co-schemers executed scams to defraud individuals and companies in the United States, as well as the IRS. Those scams included phishing scams, romance scams, and wire transfer scams. They involved multiple spoofed email addresses, fictional social media personas, false tax filings, and unwitting money mules.

As part of the scheme, defendant and his co-schemers, who operated out of Nigeria, obtained tax information and social security numbers belonging to thousands of employees at U.S. companies, in this District and elsewhere. Defendant and his co-schemers did this by sending emails made to look like they had been sent by high-level company employees, such as the CEO or CFO, requesting employee tax information. Defendant and his co-schemers sent such emails falsely purporting to be company leaders to numerous companies.

1

In turn, defendant and his co-schemers used the employees' identifying information to fraudulently file tax documents with the IRS seeking tax refunds, using the employees' social security information, but directing the IRS to deposit the refunds into bank accounts controlled by associated of the defendant and co-schemers.

Defendant and his co-schemers also attempted to fraudulently induce, and did fraudulently induce, U.S. companies to send them money via wire transfer.

Defendant and his co-schemers also turned to romance scams. They pretended to be romantically interested in victims they contacted online on social media. In reality, the defendant and co-schemers were only interested in the victims for their bank accounts. Romance scam victims were used as unwitting money mules, to transfer fraud proceeds. Defendant and his co-schemers cruelly took advantage of people to facilitate their schemes and obfuscate their own activities.

Defendant was not a mere spectator in the scheme – he was an active and necessary participant. As described in detail in the Government's Version of the Offense (GVO) and its attachments, defendant was associated with multiple email addresses used in the scheme, including email addresses used to obtain tax information from U.S. companies, and two email addresses used to file false tax returns. Contents of the email accounts associated with the defendant revealed hundreds of employee tax records from various companies and other indicators of defendant's involvement in the fraud scheme.

b. **Charges, Plea Agreement, and Maximum Penalties.**

The indictment charges defendant with four counts of wire fraud, in violation of 18 U.S.C. § 1343 (Counts One through Four) and two counts of aggravated identity theft, in violation of 18

U.S.C. § 1028A(a)(1) (Counts Five and Six). Pursuant to a written plea agreement, defendant pleaded guilty to Count Two and Count Six.

The maximum penalty for a violation of 18 U.S.C. § 1343 (wire fraud) is 20 years' imprisonment, and there is no statutory mandatory minimum sentence. A supervised release term of up to three years may be imposed.

The mandatory statutory penalty for a violation of 18 U.S.C. § 1028A(a)(1) (aggravated identity theft) is 2 years' imprisonment, to run consecutive to any other sentence. A supervised release term of up to one year may be imposed.

Defendant is also subject to a maximum fine of $500,000 ($250,000 for each count), a special assessment of $200 ($100 per each count), and any restitution in an amount imposed by the Court.

## II. GUIDELINES CALCULATIONS

The government agrees with the offense level and criminal history calculations in the PSR.

**A. The Guideline Range for Count Two is 41-51 Months' Imprisonment.**

Specifically, as to Count Two (wire fraud), the government agrees that the base offense level is 7, pursuant to Guideline 2B1.1(a)(1). The offense level is increased by 16, pursuant to Guideline 2B1.1(b)(1)(I), because the loss amount is identified in the PSR as $2,462,855.05, which is greater than $1,500,000 and less than $3,500,000.[1] The offense level is increased by 2, pursuant to Guideline 2B1.1(b)(2)(A)(i), because the offense involved more than 10 victims. The offense

---

[1] Of the six counts of indictment, defendant pleaded guilty to two counts, and admitted facts underlying all but Count 1 in his plea agreement. The government agrees that any loss related to Count 1, and associated with Company A, should not be included in the loss amount for Guidelines calculations or in any contemplated restitution.

3

level is increased by 2, because the offense conduct took place outside of the United States, pursuant to Guideline 2B1.1(b)(10)(b).

The offense level is reduced by 3 for adjustments related to acceptance of responsibility, and reduced by 2 because of defendant's status as a zero-point offender. PSR ¶ 22.

Defendant is in Criminal History Category I. PSR ¶ 72. Offense level 22, matrixed with Category I, results in a guidelines range of 41-51 months for Count Two.

### B. The Guideline Range for Count Six is 24 Months' Imprisonment.

As to Count Six (aggravated identity theft), the guidelines are the same as the mandatory sentence – 2 years' imprisonment – to be served consecutive to any sentence imposed on Count Two. PSR ¶¶ 40, 53; U.S.S.G. § 2B2.1. The guideline for Count Six is determined only by the relevant statute; it is not adjusted under Chapters Three or Four of the Guidelines and is not subject to grouping. U.S.S.G. § 2B2.1, App. Note. 3; § 3D1.1(b)(2) and § 25G1.2.

### III. A TOTAL SENTENCE OF 65 MONTHS OF IMPRISONMENT (41 MONTHS AND 24 MONTHS, CONSECUTIVE) IS APPROPRIATE UNDER SECTION 3553(a).

The facts of this case, together with the factors set forth in 18 U.S.C. § 3553(a), warrant a Guideline sentence of a total 65 months' of imprisonment: 41 months, which is the low end of the guidelines range on Count Two, followed by 24 months on Count Six. Such a sentence is sufficient, but not greater than necessary, to comply with statutory sentencing goals set forth in 18 U.S.C. § 3553(a).

### A. Nature and Circumstances of the Offense and History and Characteristics of the Defendant.

Defendant's offense involved a years-long, complex scheme, involving several types of scams and many victims. Defendant chose to be a willing participant in the scheme over and over again.

Although the known, real dollar loss to victims in this case is low, thousands of people lost the privacy of their personally identifying information as a result of the scheme. In some cases, this information was used in attempts to defraud the IRS of taxpayer refund money. But it is not known how defendant, co-schemers, or others used or sold the social security numbers they received during the scheme. The Guidelines make some attempt to quantify the value of a stolen social security number, using a proxy of $500 each for the purpose of calculating loss amount. But the value of real, stolen identity information to scammers – or people who would buy this information from scammers – is difficult to quantify, as is the potential loss to victims of identity theft.

The romance scam aspect of the scheme is particularly cruel. Romance scams prey on vulnerable people in need of connection. The defendant and his co-schemers preyed on this vulnerability, lied to romance scam victims, and implicated them in criminal conduct by directing them to move scheme proceeds.

In mitigation, the defendant has no other known criminal history and had an economically disadvantaged upbringing.

**B.    The Seriousness of the Offense, and the Need to Promote Respect for the Law, Afford Adequate Deterrence, and Protect the Public From Further Crimes.**

As discussed above, the scheme here is serious, and the public must be protected from fraud schemes like the one defendant engaged in.

The need for general deterrence is particularly strong for economic crimes, which, as here, are often premeditated and difficult to detect, and can be highly lucrative. "Because economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence." *United States v. Brown*, 880 F.3d 399, 405 (7th Cir. 2019) (quotation omitted). *See also United States v. Heffernan*, 43

5

F.3d 1144, 1149 (7th Cir. 1994) ("Considerations of (general) deterrence argue for punishing more heavily those offenses that either are lucrative or are difficult to detect and punish, since both attributes go to increase the expected benefits of a crime and hence the punishment required to deter it.").

Specific deterrence is also important here. Defendant engaged in a multi-year, multi-participant, multi-victim scheme. It was not a one-time lapse in judgement. After completing his sentence in this case, defendant will likely return to Nigeria where he cannot be effectively supervised by U.S. Probation or easily returned to this Court. It is important that the sentence in this case be significant enough to deter the defendant from engaging in similar activity in the future.

## IV. SUPERVISED RELEASE

Probation recommends no term of supervised release be imposed, pursuant to Guideline 5D1.1(c). The defendant is not a U.S. citizen, has no immigration status in the United States, and he is only in the United States because he was extradited here to answer to the instant indictment. The government expects that defendant will most likely be removed from the United States after the completion of his sentence, making supervised release impracticable.

## V. FINE

Probation has not recommended a fine. According to the PSR, defendant has no current demonstrated ability to pay a fine, and is unlikely to be able to pay a fine if supervised release were imposed. PSR ¶¶ 108-110. Accordingly, the government does not recommend the Court impose a fine.

## VI. CONCLUSION

For the reasons stated above, the government respectfully requests that this Court impose a guideline sentence.

Respectfully submitted,

ANDREW S. BOUTROS
United States Attorney

By:     */s/Ann Marie E. Ursini*
            ANN MARIE E. URSINI
            Assistant United States Attorney